IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02001-DDD-SBP

THE KONG COMPANY, LLC, a Colorado limited liability company,

    Plaintiff,

v.

BOUNCE ENTERPRISES, LLC, a Delaware limited liability company,
KSP USA, LLC, a Colorado limited liability company, and
JOSEPH MARKHAM, an individual,

    Defendants.

─────────────────────────────────────────────────────────────

**ORDER DENYING MOTION FOR SANCTIONS (ECF No. 81)**

─────────────────────────────────────────────────────────────

Susan Prose, United States Magistrate Judge

    Plaintiff, the KONG Company, LLC ("Plaintiff" or "KONG"), filed a Motion for Sanctions for Spoliation of Evidence against Defendants Bounce Enterprises, LLC ("Bounce"), KSP USA, LLC ("KSP"), and Joseph Markham. ECF No. 81 ("Motion for Sanctions" or "Motion"). The Motion has been referred to this court. ECF No. 84. This court also has been referred Defendants' motion for leave to file a surreply. ECF No. 100. Finding good cause, the court **grants** that motion and concludes that Plaintiff's response to the motion (ECF No. 103) adequately addresses the arguments raised in the surreply. The matter therefore is fully briefed.

    Upon consideration of the briefing, the entire docket, and the applicable law, the court respectfully **DENIES** the Motion for Sanctions. Nevertheless, the court will allow limited discovery concerning the issue underlying the Motion for Sanctions, strictly cabined in the manner delineated below.

I.  **Background**

   A.  **History of the Litigation**[1]

KONG seeks sanctions against Defendants for their purported failure to preserve certain websites and social medial accounts that allegedly used KONG's trademarks. Motion at 1. An explanation of the complex intertwined relationships between the parties is necessary to understand the context in which Defendants' purportedly sanctionable conduct arose and the court's resolution of the dispute.

KONG is in the business of "designing, manufacturing, and selling pet products throughout the world," including "its iconic KONG® Classic dog toy":



First Amended Complaint, ECF No. 27 ¶ 7. According to KONG, Mr. Markham has significant control over Defendants Bounce and KSP, who are described as "his entities." Motion at 2.[2] Bounce, in turn, is an owner of KONG, and Mr. Markham himself has been a manager of KONG for more than two decades. Am. Compl. ¶¶ 55, 72; Motion at 2.

---

[1] Unless otherwise noted, there is no dispute about the facts referenced here, which are drawn from the parties' briefing on the Motion and other documents in the court record.
[2] The parties seem to use the terms "Bounce" and "KSP" interchangeably, sometimes calling them "Bounce/KSP." The court follows their lead here. Any technical or legal distinction between the two has no impact on the court's analysis of KONG's request for sanctions.

Sometime in 2019, Mr. Markham came up with an idea about a product similar to the KONG® Classic dog toy, but geared toward large animals, which he wanted to market and sell through the Defendant entities "under the KONG name and us[ing] KONG's iconic snowman shape design"—a design KONG claims is "protected trade dress." *Id.* After some negotiations, KONG agreed, "with the condition that the marketing and sale of Bounce's products would be through a separate entity that was not owned or controlled by Markham." *Id.* That "separate entity" turned out to be KVP International, Inc. ("KVP")—an entity that in fact also had significant connections to KONG. *Id.* John Nelson, who was KONG's Operating Manager, was the president of KVP. ECF No. 94 (Defendants' Response to the Motion, "Resp.") at 3 n.1. *See also* Am. Compl. ¶ 21; Counterclaims (ECF No. 75) ¶ 5.

In July 2019, Bounce entered into an Exclusive Distribution Agreement with KVP, which gave KVP "the exclusive right to market and distribute Bounce's products." Motion at 2. Separately, KONG entered into a Trademark Licensing Agreement with KVP, pursuant to which KVP was allowed to use "KONG's trademarks in connection with marketing and selling Bounce's products[.]" *Id.* The parties refer to these two agreements as the "Triangle Agreements." *Id.* at 2-3. Things seemingly did not go to plan, and by mid to late 2020, disputes arose concerning the Triangle Agreements. Am. Compl. ¶¶ 19-28. On November 3, 2021, KONG, Bounce, and KVP terminated the Triangle Agreements. Motion at 3. In the instant litigation, Defendants contend that KONG subsequently entered into a new trademark licensing agreement with Defendants under essentially the same terms as the terminated Trademark Licensing Agreement between KONG and KVP. Resp. at 3-4; *see also* Counterclaims, ECF No. 75 ¶¶ 38-43. KONG disputes that contention, asserting that it never agreed to the on-going use of

3

its trademarks by Defendants. Motion at 3.

KONG filed this action on August 9, 2022, bringing claims for infringement of its trademarks and trade dress in violation of 15 U.S.C. § 1114(a); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125; patent infringement; and various related claims under Colorado statutory and common law. Am. Compl. ¶¶ 74-111. The court entered a scheduling order on April 25, 2023. ECF No. 42. After extensions, the court set expert disclosure deadlines of May 13 and May 31, 2024; a discovery deadline of June 14, 2024; and a deadline for filing dispositive motions of June 21, 2024. *See* ECF No. 74. Both sides have filed motions seeking summary judgment on a portion of their respective claims, counterclaims, and defenses. *See* ECF No. 82 (Plaintiff's Motion for Partial Summary Judgment on Claim One and Counterclaims 1-5); ECF No. 83 (Plaintiff's Motion for Summary Judgment on Defendants' Invalidity Defense); ECF No. 87 (Defendants' Motion for Partial Summary Judgment). In accordance with the practice of the Honorable Daniel D. Domenico, who is presiding over this matter, no pretrial conference or trial date will be set until these pending motions are resolved.

**B.     Defendants' Deactivation of the Websites and Social Media Accounts**

The spoliation issue now before the court concerns two websites and certain social media accounts created by KVP in connection with the Triangle Agreements.

While the Triangle Agreements were in effect, KVP made two websites, KONGEquine.com and KONGZoo.com (the "Websites"), along with social media accounts on Instagram, YouTube, and Facebook (the "Social Media Accounts"), to support its marketing and sales activities for KSP's products. Resp. at 3. After the Triangle Agreements were terminated in November 2021, KVP transferred control of the Websites and Social Media Accounts to KSP.

4

*Id.* at 4. Konstantin Khrestsov, a witness who served as the designee for Bounce and KSP pursuant to Federal Rule of Civil Procedure 30(b)(6), testified that the transfer process was "complex" and took "at least a couple of months." February 22, 2024 Khrestsov Deposition (Excerpts), ECF No. 94-3 at 11:19-23; *see also id.* at 11:12-14 (stating that the transfer process started in the spring of 2022). For at least a portion of this transition work, KSP sought help from Tess McIntire, a KVP employee who had been running the Websites and Social Media Accounts for KVP while the Triangle Agreements were in effect. *See* Resp. at 94; *see also* Khrestsov Depo. at 24:17-20 (discussing KSP's contract with McIntire).

It is apparent from the record that Defendants used the Websites and Social Media Accounts after the transfer from KVP. On April 18, 2023, after this case was filed, KONG argued against Defendants' request to stay discovery because, in KONG's view, Defendants were continuing to engage in illegal infringement of KONG's trademarks—specifically, by means of their utilization of the Websites and Social Media Accounts. ECF No. 39 at 4; ECF No. 39-2 at 2, 4 (attachments to motion to stay, including KONG Equine Facebook page and KONG Equine Instagram account, which KONG presented as "[e]xamples of Defendants' on-going infringing activity and resulting confusion"). According to Defendants, KONG's argument impelled them to deactivate the Websites and disable "most of the Social Media Accounts," Resp. at 4, but it is clear from the record Defendants did not immediately inform KONG that they had done so.

On May 30, 2023, KONG served an interrogatory asking Defendants to "[i]dentify all websites and social media accounts that You have used in connection with marketing, promoting or selling any of Your products from January 1, 2019 through the present." Defendants

5

responded, as pertinent here, on July 13, 2023:

> Defendants own the domain name KSPUSA.com and have marketed, promoted, and/or sold products through that website. Defendants are aware of the following websites and social media sites that were being used to market products KSP developed and manufactured, *but these websites and social media sites were not operated by KSP*.

ECF No. 81-8 at 18-19 (listing "the following sites . . . *operated by KVP*: Kongequine.com, Kong equine Instagram, Kong equine youtube, Kongzoo.com, Kong Zoo Instagram, Kong Equine youtube") (emphasis added). Not surprisingly, in light of what KONG was able to discern from its own computer research appended to its opposition to the motion to stay—which showed active utilization of Facebook and Instagram accounts in sales and marketing by Defendants in April 2023—KONG questioned the accuracy of this response. In a conferral letter with Defendants' counsel dated August 23, 2023, KONG's counsel sought an explanation and supplemental information:

> Based on other discovery and information that has been provided in this case, it is our understanding that many, if not all, the websites and social media accounts that were created by KVP were transferred to Defendants at some point after November 2021, and that Defendants continued to maintain and alter some, or all, of those websites and social media accounts after they were transferred. Therefore, please supplement Defendants' response to Interrogatory No. 13 and identify any and all responsive websites and social media accounts that were transferred to one or more of the Defendants after November 2021.

ECF No. 81-9 at 3.

In a letter dated September 29, 2023, defense counsel told counsel for KONG that Defendants had disabled the Websites and Social Media Accounts "[f]ollowing Plaintiff's identification of the websites in KONG's exhibits to its Opposition to Defendant's Motion to Stay filed on April 18, 2023." ECF No. 81-10 at 3. Counsel also suggested it was unclear

whether those websites and accounts had ever been transferred from KVP to Defendants. *Id.* ("Defendants' investigation regarding *the transfer, if any, of the websites and social media accounts from KVP to KSP* is ongoing.") (emphasis added). But Defendants never provided supplemental responses, and they did not formally verify—until Mr. Khrestsov's deposition months later, in February 22, 2022—that the Websites and Social Media Accounts created by KVP had in fact been transferred to Defendants sometime in the spring of 2022. Khrestsov Depo. at 11:8-14. Indeed, as Defendants now acknowledge, "there is no dispute that, after November 2021, KVP transferred control of the Websites and Social Media Accounts to KSP." Resp. at 4.

        C.        **Defendants' Retrieval and Production of Archived Information**

The consequences of Defendants' deactivation of the Websites and Social Media Accounts in April 2023 are at the heart of the spoliation dispute here.

Mr. Khrestsov seems to have been in charge of removing these materials from public view; he testified at his deposition that they were "deleted permanently." Khrestsov Depo., ECF No. 81-11 at 36: 20-37:18. 44:22-25. It is unclear whether Mr. Khrestsov's testimony on these points was provided in his capacity as a Rule 30(b)(6) designee or in his personal capacity. *See id.* at 35:4-16. The relevant topic in the deposition notice seeks information concerning "[s]ocial media accounts created and/or operated by KVP, including but not limited to Instagram accounts for Kong Equine and Kong Zoo and YouTube accounts for Kong Equine and Kong Zoo." ECF No. 96-1 at 8 (Topic No. 19). It is by no means clear from the face of the topic that it would encompass technical issues, including whether deleted information from the accounts could be retrieved or restored, and if so, what efforts Defendants had made to attempt that retrieval or restoration. *See* Fed. R. 30(b)(6) (deposition notice "must describe with reasonable particularity

7

the matters for examination").

KONG characterizes Mr. Khrestsov's taking down the Websites and Social Media Accounts as reflecting "a deliberate choice" by Defendants "not to preserve [] evidence." Motion at 8. Further, KONG asserts, "[b]ecause Defendants have destroyed key documents and records that can never be recovered," KONG argues that "severe spoliation sanctions" in the form of adverse inferences are warranted. *Id.* at 13-14. KONG seeks an order imposing three "rebuttable factual presumptions: (1) each of the websites and social media accounts deleted by Defendants made use of KONG's trademarks, (2) Defendants' use of KONG's trademarks on each of those websites and social media accounts were likely to cause confusion, and (3) Defendants' use of KONG's trademarks on each of the deleted websites and social media accounts was not authorized or approved by KONG." *Id.* at 14.

Defendants vigorously dispute KONG's contentions, disclaiming any bad faith in their handling of the Websites and Social Media Accounts and, even more importantly, denying that the materials KONG seeks have been permanently lost. Attorney Carolyn Juarez is one of the lawyers representing Defendants in this case. In a declaration, Ms. Juarez describes the efforts Defendants made to locate and retrieve archived information related to the Websites and Social Media Accounts. *See generally* Juarez Decl., ECF No. 94-4. She states that she had "multiple meetings" with Mr. Markham and other KSP employees to attempt to located archived materials; that she worked with Defendants to search their files; and that Defendants "engaged a forensic discovery team to search the internet, including the Wayback Machine, for any records of the Websites and Social Media Accounts." *Id.* ¶¶ 3-5.

Ms. Juarez states that these efforts were successful. Defendants were able to locate

8

"materials documenting posts to the to the Social Media Accounts including draft content, photos, and other materials." *Id.* ¶ 6. Defendants then made two supplemental productions of documents to KONG: the first on June 7, 2024, and the second on July 9, 2024. *Id.* ¶¶ 9, 16. The production of documents to KONG on July 9, 2024,[3] included the following materials:

> 1. Archive files for the KONG Equine Facebook account, KONG Equine Instagram account, and KONG Zoo Facebook account, created on April 19, 2023, when the accounts were deactivated;
>
> 2. Archive file for the KONG Zoo Instagram account;
>
> 3. Shopify[4] backup files for the kongzoo.com and kongequine.com websites, created by Shopify when the websites were deactivated;
>
> 4. Excel files with the product listings that were active at the time the kongzoo.com and kongequine.com websites were deactivated, which, when uploaded to Shopify, would enable the websites to be reactivated and viewed exactly as they were when deactivated, and customer and order history;
>
> 5. Files maintained by Tess McIntire with content for the KONG Equine Facebook and Instagram Accounts and kongequine.com website.

ECF No. 94-5 at 3. In total, the July 9, 2024 production exceeded 13,000 pages. *Id.* (referencing accompanying documents produced as "Bates labeled BOUNCE_FED_008059-BOUNCE_FED_021356"). Ms. Juarez avers that these materials included "the files KONG sought; specifically, the archived Instagram and Facebook account histories for the KONG Equine account, Facebook account history for the KONG Zoo account, and the Shopify backup

---

[3] A specific description of the documents produced by Defendants on June 7, 2024, is not in the record.

[4] The court understands Shopify, Inc., to be an e-commerce platform used by Defendants to market and sell their products. *See* https://en.wikipedia.org/wiki/Shopify.

files for kongzoo.com and kongequine.com, all of which were created when Defendants deactivated the Social Media Accounts and the Websites." Juarez Decl. ¶ 15.

KONG disputes that these efforts are sufficient. In KONG's view, the supplemental materials have been produced in a form that "is mostly unusable without further discovery from Defendants and/or an expert's review and testimony." Reply at 6. KONG asserts that the materials were not produced in their native file structure or with sufficient metadata to determine the source or significance of the documents, with about twenty per cent of the production "appear[ing] to just be error messages" with metadata dated June 27, 2024, or later. *Id*. at 7. KONG notes that the materials include many single-page images posted to one of the Websites or Social Media Accounts, but because metadata is lacking, there is no information about when, where, or how the images were used. *Id*. at 6-7.

**II.     Analysis**

   **A.     Legal Standards**

"Spoliation" is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) (citations omitted). To obtain sanctions for spoliation of evidence, a movant must first show "(1) a party ha[d] a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)).

When the alleged spoliation involves electronically-stored information ("ESI"), Rule

37(e) of the Federal Rules of Civil Procedure governs:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1)-(2). Thus, Rule 37(e) delineates "four triggers necessary to a finding of spoliation: (1) the party had a duty to preserve ESI; (2) the party failed to take reasonable steps to preserve it; (3) the ESI was lost as a result of the party's failure to take reasonable preservation steps; and (4) the ESI cannot be restored or replaced with additional discovery." *Harriman v. Smart*, No. 22-cv-01883-SKC, 2024 WL 3900263, at *2 (D. Colo. Aug. 21, 2024) (citing Fed. R. Civ. P. 37(e)(1)).

KONG, as the moving party, has the burden to prove by a preponderance of the evidence that Defendants failed to preserve evidence or destroyed it. *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015) (recognizing that "[s]ome courts within the Tenth Circuit have declined to engage in a substantive spoliation analysis when a party fails to first establish the existence of the documents at issue") (citations omitted). If the moving party meets this burden, "[d]istrict courts have 'substantial weaponry' in their arsenal to shape the appropriate relief for a party's spoliation of evidence." *Helget v. City of Hays*, 844 F.3d 1216, 1225-26 (10th Cir. 2017) (citations omitted). The court may select from a spectrum of options,

11

including issuing an adverse inference, the sanction KONG seeks here. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219-20 (10th Cir. 2008). And because KONG seeks an adverse inference to remedy the alleged spoliation, it must also prove intent or bad faith. Fed. R. Civ. P. 37(e)(2)(A); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

When deciding the appropriate sanction for spoliation, "courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party." *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, 1998 WL 68879, at *4 (10th Cir. 1998) (unpublished) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). The court is guided by the overarching principle that it "should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing." *Id.* at *6.

### B.     Application

Applying these legal principles to the facts here, the court finds that KONG has failed to meet its burden to establish that the court should impose spoliation sanctions.

#### 1.     Destruction or alteration of evidence

As an initial matter, the evidence before the court is less than convincing that Defendants destroyed, or significantly altered, any evidence. *See Cache La Poudre*, 244 F.R.D. at 620. While there is no dispute that Mr. Khrestsov took down the Websites and Social Media accounts after

12

Defendants learned that KONG claimed it was prejudiced by the continued public presentation of those materials, Defendants have represented to the court that they succeeded in restoring thousands of pages of information related to the Websites and Social Media Accounts. Juarez Decl. ¶ 15. To be sure, KONG contends that the restored information is deficient, Reply at 6-7, but it is not evident from the record that KONG is in possession of facts to support that contention.

Nor does the record indicate that counsel for KONG fully engaged with defense counsel after being informed that, "upon further investigation" by Defendants, "*Mr. Khrestsov did indeed retain backup copies* of the Websites and Social Media Accounts[.]" July 9, 2024 letter from Juarez to Daniels, ECF No. 94-6 at 3 (asking KONG to withdraw the Motion for Sanctions) (emphasis added). In response to Ms. Juarez's letter, counsel for KONG pointed to information in the record up to that time (including the deposition of Mr. Khrestsov) as support for the conclusion that KONG was "within its rights to finally move forward with filing its Motion [for Sanctions]." July 10, 2024 letter from Best to Juarez, ECF No. 94-6 at 5-6. That may be, but the critical point here is that KONG forged ahead with its Motion for Sanctions seemingly without having taken steps to meaningfully evaluate the import of new evidence retrieved with the input of a retained "forensic discovery team." Juarez Decl. ¶ 5; Resp. at 4.

On this record, the court is left with significant doubt that KONG has met its burden to show it is "more likely than not" that Defendants destroyed or significantly altered any evidence. *See Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1337 (10th Cir. 2017) (articulating this standard for establishing "preponderance of the evidence"). However, even if the court were to assume that KONG had met this burden, it

13

still could not conclude that spoliation sanctions are warranted here.

### 2. Prejudice

Following a careful review of the record, the court finds that KONG has not shown that it is prejudiced by its purported loss of access to archived information from the Websites and Social Media Accounts. *See Burlington Northern*, 505 F.3d at 1032.

KONG's argument about prejudice is focused on timing. As KONG notes, by July 9, 2024—when Defendants informed KONG that information from the disabled accounts and websites had been retrieved—the deadlines for expert witness disclosures and dispositive motions had passed. *See* Resp. at 2; *see also* ECF No. 56 (setting affirmative expert disclosure deadline of March 11, 2024); ECF No. 74 (setting rebuttal expert disclosure deadline of May 31, 2024; expert discovery deadline of June 14, 2024; and dispositive motion deadline of June 21, 2024). But the passing of those deadlines need not have worked "extreme prejudice" on KONG, as KONG now contends it did. *See* Reply at 2. KONG never explored the possibility of reopening discovery for the limited purpose of probing the July 9, 2024 production—precisely the sort of issue the undersigned United States Magistrate Judge is here to help the parties address. Nor did it abide by this court's practice standard requiring compliance with protocols for informally resolving discovery disputes before filing a motion. *See* Uniform Civil Practice Standards of the United States Magistrate Judges, at 15 § VI.1. ("To avoid unnecessary and expensive motions practice, a party may not file an opposed discovery motion without first complying with these discovery dispute procedures. Filing a disputed discovery motion without permission from the Court may result in the motion being stricken and the imposition of appropriate sanctions.").

In short, no prejudice to KONG, "extreme" or otherwise, is attendant on its decision to circumvent protocols that may have avoided expensive, and likely unnecessary, briefing on a motion that has delayed the progress of this litigation. Neither does the court discern any prejudice to KONG in its supposed inability to use the documents from the July 9, 2024 production in its summary judgment briefing. *See* Reply at 2. Here, again, KONG did not ask the court to stay briefing on those motions, nor did it ask to withdraw and refile them, based on a need to inquire more deeply into the materials that were produced after those motions were filed. Those were measures this court could have implemented, if asked to do so in a timely fashion. Notably, too, KONG attached to its motion for partial summary judgment on the trademark infringement claim and Defendants' counterclaims, ECF No. 82, material from the Social Media Accounts and Websites before they were disabled. *See* ECF No. 82-23.[5] KONG has not suggested that Judge Domenico need await further evidence of this type before ruling on the motion for partial summary judgment. Rather, KONG explicitly relied on the argument that the full extent of Defendants' use of its marks was *not* known because Defendants had deleted the Websites and Social Media Accounts. ECF No. 82 at 7 ¶ 24; *see also id.* at 2 n.1 (asserting that "[t]he damages resulting from Defendants' infringement will still need to be addressed at trial").

Importantly, the record suggests delay *on KONG's part* in bringing forward the spoliation issue. KONG had known months before the March 11, 2024 deadline for disclosing affirmative experts that Defendants had disabled the Websites and Social Media Accounts. *See* September 29, 2023 letter from Jones to Daniels, ECF No. 81-10 at 3 ("Following Plaintiff's identification

---

[5] This court, of course, takes no position on the merits of any of the three pending summary judgment motions, which Judge Domenico has not referred for a recommendation.

of the websites in KONG's exhibits to its Opposition to Defendant's Motion to Stay filed on April 18, 2023, Defendants disabled the websites and social media accounts"). Based on this court's review of the record, it does not appear that KONG did much, if anything, to follow up with Defendants' counsel between September 2023 and February 2024, when Mr. Khrestsov was deposed. The court recognizes, of course, that Defendants are responsible for preserving relevant information. But if the deleted information was as important to KONG's claims or defenses as it now argues, the court would have expected KONG immediately to have followed up with Defendants in October 2023 to ascertain the steps they were taking to restore and retrieve that data—including with the assistance of a forensic expert. Put simply, KONG's own actions further negate a finding of prejudice.

Likewise is the court unpersuaded to find that KONG is prejudiced by Mr. Khrestsov's allegedly "false testimony" that the Websites and Social Media were not retrievable. Reply at 5. In the first instance, the record here provides no basis for the court to find that Mr. Khrestsov gave false or misleading testimony on this issue. The deposition excerpts in the record do not indicate that counsel for KONG specifically asked whether any of the deleted information was retrievable or restorable or available from some other source. *See generally* Khrestsov Depo., ECF No. 81-11. Counsel for KONG instead asked Mr. Khrestsov whether he had tried to "backup" the data before deleting it and whether Defendants still had access to the account information. *See* Khrestsov Depo., ECF No. 94-3 at transcript pages 18-24. A person like Mr. Khrestsov—who lacked technical expertise and whose primary role was on the manufacturing side of the business, *id.* at 12:2-22—would not necessarily interpret counsel's questions as asking whether the deleted information could be retrieved through some archived source or with

16

the assistance of a forensic expert. Certainly, such questions were not asked directly of Mr. Khrestsov in the excerpts of his deposition included in the record before this court. Nor is there any indication in the record that the generically-framed Rule 30(b)(6) topic of "[s]ocial media accounts created and/or operated by KVP," ECF No. 96-1 at 8, would have been understood by Defendants to encompass technical issues like the restoration or retrieval of account information, or whether the assistance of a forensic expert would be necessary to attempt such restoration or retrieval.

Finally, the court observes that a finding of prejudice to KONG is undermined by the web of intersecting relationships among the entities and people on both sides of this litigation and the knowledge that logically would have flowed from those connections. Recall that Defendant Bounce is an owner of Plaintiff KONG, Am. Compl. ¶ 72, and that Defendant Markham has been a manager of Plaintiff KONG for over twenty years. *Id.* ¶ 55. Respectfully, the idea that KONG was so unaware of the status of the Websites and Social Media Accounts—which were publicly available while they were active—such that their deactivation genuinely deprived KONG of the ability "to determine how KVP was using KONG's marks prior to termination of the Triangle Agreements and how Defendants continued using KONG's marks after termination," Motion at 12, strains credulity. The knowledge attendant on this undisputed interconnectedness—while in no way absolving Defendants of the obligation to preserve evidence—supports the court's conclusion that KONG sustained no prejudice of legal magnitude here.

*   *   *

For these reasons, the court finds that KONG has not met its burden to show that

spoliation sanctions are warranted. This is sufficient for the court to **deny** the Motion for Sanctions, and it does so.

Although the court is not obliged to proceed to assess whether KONG has proven intent or bad faith, as would be required to establish its entitlement to the sanction of an adverse inference, *see Turner*, 563 F.3d at 1149, the court recognizes that the situation here is, unfortunately, a contentious one insofar as the parties and their counsel are concerned. Therefore, the court deems it appropriate to explicitly state that the record here evinces no bad faith or intentional misconduct on Defendants' part. It may be that Defendants should have acted more expeditiously to drill down on the consequences of their knowing deactivation of the Websites and Social Media Accounts in April 2023, to convey that fact to KONG in a more straightforward manner, and to respond with more speed to KONG's request for follow-up information. The court finds no particular cause to praise Defendants concerning the timeline here, but at most, they acted in a manner more illustrative of negligence than intentional misconduct. *See Aramburu*, 112 F.3d at 1407.

Looking at the matter from the other side, the court is also not prepared to condone the actions of Plaintiff and its counsel for what appears to be a rush to convince the court of the need to sanction Defendants. *Cf. In re Davy*, 345 B.R. 337, 347 (Bankr. D. Colo. 2006) ("Motions seeking sanctions should truly be a last resort and not a routine litigation tool."). Certainly, KONG did not comply with this court's discovery-dispute protocols before filing the Motion for Sanctions, and stopping to do that one small thing might have allowed this court to resolve the dispute without briefing and without the expenditure of significant judicial resources. Even so, just as the court attributes no bad faith to Defendants or their counsel, neither does it ascribe any

18

ill will to KONG or its attorneys.

Weighing all of these circumstances, and emphasizing that no sanctionable conduct has occurred, the court nevertheless considers its obligation to implement the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In doing so, the court recognizes that Plaintiff has not obtained discovery concerning the admittedly late production of voluminous records concerning Defendants' deactivation of the Websites and Social Media Accounts—records generated, apparently, with the assistance of a forensic expert. Exercising its "broad discretion" authority to control discovery, *see Kenno v. Colo. Governor's Off. of Info. Tech.*, Nos. 21-1353 & 21-1434, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023), *cert. denied*, 144 S. Ct. 696 (2024), this court finds that it is fair and in the interest of justice to allow **limited** discovery on this point, cabined in the following manner: (1) each side, if it so chooses, shall be allowed to disclose one additional expert, with disclosures **for both sides due on or before February 17, 2025**, and (2) **each side shall be allowed to conduct one deposition** of the other side's newly-disclosed expert, of no more than one day of seven hours in length, to be completed on or before **March 17, 2025**. **No other discovery shall be allowed.** By this means, the parties will be able to obtain and utilize any pertinent information at trial, as they deem appropriate.

By this order, the court does **not** approve the filing of any additional motions for summary judgment or the reopening of briefing on any pending motion, including the motions for summary judgment. Going forward, the court respectfully adjures the parties to work cooperatively, guided by the better angels of our nature.

### III. Conclusion

For the foregoing reasons, the Motion for Sanctions for Spoliation of Evidence, ECF No. 81, is **DENIED**, and Defendants' motion for leave to file a surreply, ECF No. 100, is **GRANTED**. Discovery is reopened in accordance with the above limitations and timeframes.[6]

DATED: December 10, 2024                         BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").