**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02001-DDD-SBP

THE KONG COMPANY, LLC, a Colorado limited liability company,

Plaintiff,

v.

BOUNCE ENTERPRISES, LLC, a Delaware limited liability company,
KSP USA, LLC, a Colorado limited liability company, and
JOSEPH MARKHAM, an individual,

Defendants.

---

**PLAINTIFF THE KONG COMPANY, LLC'S TRIAL BRIEF**

---

Plaintiff, The KONG Company, LLC ("KONG"), through counsel, submits its Trial Brief for the 5-day jury trial set to begin on February 23, 2026.

**INTRODUCTION AND FACTUAL OVERVIEW**

The disputes in this action center on Defendants' – who consist of Mr. Markham and his entities – unauthorized use of KONG's intellectual property. Given that the Court reviewed and addressed most of the claims in connection with the parties' respective summary judgment motions, the primary purpose of this Trial Brief is to highlight and discuss certain evidentiary issues that KONG anticipates will need to be addressed at trial in connection with the presentation of evidence.

The primary purpose of this lawsuit is to protect KONG's brand and IP rights against misuse by one of KONG's owners. KONG, based in Golden, Colorado, is one of the best known and well respected pet-toy companies in the world. The original KONG toy was developed by

197397371v1

Defendant Joseph Markham in the 1970s, and he initially sold the product through his entity Bounce, Inc. In 2000, Bounce was in need of cash and Mr. Markham partnered with John Nelson to form The KONG Company and Bounce assigned all of its IP assets to KONG.

In 2019, KONG entered into a set of agreements with Bounce and an entity called KVP International, Inc., which the parties referred to as the Triangle Agreements. The basic structure of the Triangle Agreements was that Bounce would design and manufacture toys for zoo and farm animals and KVP would then market and sell those products (if approved) using KONG's trademarks. Thus, one of the Triangle Agreements was a Trademark Licensing Agreement between KONG and KVP. Bounce was not a party to the Trademark Licensing Agreement; instead it had an Exclusive Distribution Agreement with KVP.

In November 2021, KONG, Bounce and KVP agreed to terminate the Triangle Agreements and executed a Mutual Termination Agreement. This action does not involve any claims or alleged breaches relating to the Triangle Agreements. Rather, the relevancy of the Triangle Agreements and their subsequent termination is that those facts are the starting point for the disputes in this action. While the parties (including Bounce) agreed to terminate the Triangle Agreements, Mr. Markham still wanted to move forward with manufacturing and selling products using KONG's trademarks. KONG, in an effort to be supportive of Mr. Markham's new business venture, KSP, told Mr. Markham it was willing to sign a new trademark licensing agreement with Bounce/KSP, but only if the agreement had the same terms as the prior KVP Trademark Licensing Agreement. In short, KONG offered to sign a new agreement that replaced KVP with KSP.

The facts presented at trial will establish that following KONG's offer, Mr. Markham never asked KONG to sign a new agreement that merely replaced KVP with KSP. Instead, over the next

several months, Bounce attempted to negotiate additional terms with KONG and eventually asked KONG to sign a new agreement that added additional terms, including allowing Bounce to use KONG's trademarks on products that had not previously been approved. KONG refused to sign Bounce's proposed agreement and, as a result, KONG and Bounce/KSP never entered into a trademark licensing agreement. However, Defendants continued to use KONG's trademarks despite KONG's repeated demands to stop and Mr. Markham took the position that since he was KONG's Product and Technical Manager, the Company could not take any action to enforce its IP rights without his permission.

These events primarily occurred during the first few months of 2022, and intersected with other disputes that were arising between KONG's owners. On March 18, 2022, Bounce filed a lawsuit in Colorado state court against KONG, Orixas LLC (Mr. Nelson's entity) and Mr. Nelson relating to the various management disputes between Mr. Nelson and Mr. Markham (the "State Court Lawsuit"). Shortly thereafter, the parties agreed to mediate and entered into a Tolling Agreement, which included an agreement that KONG would not to file this lawsuit during the pendency of the Tolling Agreement. The mediation efforts were not successful and the Tolling Agreement was terminated, at which point Bounce refiled its State Court Lawsuit and KONG filed this action.[1]

Even after KONG filed this lawsuit, Defendants continued using KONG's intellectual property without permission and continued to take the position that KONG lacked the authority to

---

[1] KONG, Orixas, and Kathy Decker also filed a separate lawsuit against Bounce and Mr. Markham in Colorado State Court at the same time. The two lawsuits were consolidated and the actions proceeded to a 3-week bench trial in September 2025. The parties are still waiting on a ruling from the Court.

197397371v1

enforce its IP rights without Mr. Markham's consent. As this action progressed, Defendants did start to comply with KONG's demands, including taking down infringing websites, stopped selling products infringing KONG's trade dress and started using the trade name PetKORE. However, Defendants continue to sell its pet-toy ball, which infringes KONG's design patent and continues to cause confusion in the marketplace regarding the affiliation or sponsorship between KONG and the Defendants.

## ANTICIPATED EVIDENTIARY ISSUES

### *1. What is in Dispute for this Trial*

For the most part, the primary evidentiary issues KONG anticipates will need to be addressed at trial will involve disputes regarding certain evidence and arguments Defendants plan on presenting that KONG contends are not relevant to any of the claims and defenses *in this lawsuit*. KONG's concern and objection is that Defendants will attempt to introduce evidence relating to disputes between Mr. Markham and Mr. Nelson regarding the management of KONG (i.e. the disputes relating to the State Court Lawsuit), as justification for its use of KONG's intellectual property. However, those disputes, and the evidence surrounding those disputes, are not relevant (i.e. facts of consequence) to the claims and defenses that will be addressed in this trial.

While the jury will need to decide several claims and counterclaims, the trial will primarily focus on two key disputes. First, whether Defendants' undisputed use of KONG's trademarks was authorized. There is no dispute that the Defendants were using KONG's trademarks – i.e. this is not case involving the use of a similar but not identical marks. Rather, Defendants' defense, and basis for their counterclaims, is that in November 2021, as part of the termination of the Triangle

4

Agreements, KONG agreed to allow Defendants to continue using KONG's trademarks. KONG, on the other hand, refutes those contentions. KONG's position is that the parties never entered into a new trademark licensing agreement because Defendants rejected KONG's offer to sign a new agreement that merely replaced KVP with Bounce/KSP. Additionally, KONG contends that even if there was an agreement, Defendants still infringed KONG's trademarks because their use of KONG's marks went beyond the scope of the alleged licensing agreement.

The second key dispute involves whether a pet-toy ball manufactured and sold by Defendants (the "Accused Product") infringes a design patent owned by KONG (the "'D562 Patent"). Unlike the use of KONG's trademarks, Defendants are not taking the position that KONG agreed to or licensed the use of its 'D562 Patent. Rather, Defendants' position is that their Accused Product does not infringe KONG's patent, under the ordinary observer test, and that the 'D562 should be invalidated based on obviousness. KONG refutes both those positions and contends that the 'D562 Patent is valid and that the overall design of the Accused Product is substantially the same as the claimed design in the 'D562 Patent.

Therefore, the factual disputes that the jury will need decide include: (1) to what extent were Defendants using KONG's trademarks, (2) did Defendants use cause a likelihood of confusion, (3) was there a licensing agreement between KONG and Defendants and, if so, was Defendants' use of KONG's trademarks authorized, (4) is the design of Defendants' Accused Product substantially the same as the claimed design in the 'D562 Patent, and (5) whether Bounce's and Mr. Markham's actions were also a breach of the fiduciary duties they owed to KONG.

197397371v1

### 2. *The Facts and Circumstances Regarding Mr. Markham Grievances With KONG's Other Owners Are Not Relevant to Determine the Disputes At Issue.*

The first key evidentiary issue KONG anticipates will need to be addressed is to what extent evidence relating to the disputes between Mr. Nelson and Mr. Markham are relevant to the claims and defenses in this action. As previously mentioned, in 2022, Bounce filed the State Court Lawsuit, which primarily focused on management and ownership issues relating to KONG (the "Non-IP Disputes"). For the most part, the claims and disputes in that case are not the same disputes that need to be resolved in this action.

However, based on certain trial exhibits (*see, e.g.,* Bounce's Trial Exhibits 15, 16, 17, 32, and 78) identified by Defendants, as well as discussions relating to jury instructions, it is KONG's understanding that Defendants plan on presenting evidence relating to the Non-IP Disputes as part of an effort to insinuate that KONG, acting at the direction of Mr. Nelson, is attempting to weaponize its IP rights against Defendants as leverage relating to the Non-IP Disputes.

KONG refutes Defendants' accusations and their attempt to misconstrue KONG's motivations for filing this lawsuit. However, the fact that KONG denies these allegations does not mean they are relevant disputes that will need to be decided by the jury. In short, KONG – like any other owner of IP assets - does not have to justify its right to protect and enforce its statutory rights. Yet, some of the evidence and arguments Defendants plan on presenting will require KONG to justify its rights under the guise of asserting amorphous defenses of unclean hands and patent misuse. However, merely asserting those defenses is not a catch-all to argue that any evidence of alleged bad-faith conduct is relevant. Rather, in order to be relevant, the evidence still has to relate to the legal standards for those defenses.

First, the affirmative defense of "unclean hands" only applies to equitable claims and requires evidence that plaintiff has "engaged in improper conduct regarding the subject matter of the cause of action." *Sender v. Mann*, 423 F.Supp.2d 1155, 1167 (D. Colo. 2006). In the context of a trademark infringement claim, an unclean-hands defense arises "when the plaintiff has acted inequitably toward the defendant in relation to the trademark." *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004). In *Worthington*, for example, the court found the defense applicable because the "plaintiff's own machinations had prevented the defendant from meeting the conditions of its licensing agreement" and then sued for infringement. *Id.* at 1321.

Here, Defendants want to admit evidence relating to the Non-IP Disputes to support their contention that KONG is asserting infringement claims as leverage "in conjunction with other unrelated business and ownership disputes at KONG." Bounce's Counterclaim (Dkt. No. 75) at ¶ 8. That contention is not relevant to the applicable legal standard for an unclean hands defense. Unlike the situation in *Worthington*, the purported evidence of inequitable conduct Defendants plan on introducing (that KONG objects to) does not relate to KONG's allegations of infringement. Rather, the types of evidence KONG objects to is evidence relating to the Non-IP Disputes, which is being offered for the purpose of inferring to the jury that KONG's infringement claims are somehow unjustified because it is only asserting the claims as retaliation relating to the Non-IP Disputes. KONG should not have to spend its limited trial time refuting such scurrilous accusations when they are not a relevant to legal standard for an unclean-hands defense. *See Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1030 (D. Colo. 2014) (rejecting unclean-hands defense based on allegation that purpose of copyright-infringement lawsuit was to extort defendant and not to protect copyrighted material).

7

Second, the affirmative defense of patent misuse applies when the patent holder is allegedly "using the patent to obtain market benefit **beyond that which inures in the statutory patent right**." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1339 (Fed. Cir. 2006) (internal quotations omitted) (emphasis added). And the Federal Circuit has made clear that "the defense of patent misuse is not available to a presumptive infringer simply because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects." *Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1182 (Fed. Cir. 2011) (*quoting Princo Corp. v. International Trade Commission*, 616 F.3d 1318, 1329 (Fed. Cir. 2010)). Rather, where "the patentee has not leveraged its patent beyond the scope of rights grant by the Patent Act, misuse has not been found." *Id.*

Here, Defendants contend that KONG brought its patent-infringement claim in bad faith to deter the Defendants from engaging in competition that is otherwise permitted by the KONG Operating Agreement. And, similar to their unclean-hands defense, Defendants plan on introducing evidence as part of an effort to infer that KONG is only asserting its patent rights as further leverage relating to the Non-IP Disputes. However, that is not a proper patent-misuse argument and any evidence being offered to support it is irrelevant because none of that evidence demonstrates that KONG is attempting to improperly extend its statutory rights. The Patent Act expressly provides that "[n]o patent owner otherwise entitled to relief for infringement . . . of a patent shall be deemed guilty of misuse or illegal extension of the patent right by . . . [seeking] to enforce his patent rights against infringement . . . [or refusing] to license or use any rights to the patent." 35 U.S.C. § 271(d)(3)-(4). Given that, KONG should also not have to use its limited trial

8

time to refute Defendants' allegations and justify why it is entitled to enforce its statutory rights as the patent owner.

### 3. Evidence Regarding Dog Safety or the Functional Purpose of Defendants' Accused Product is Not Relevant

In addition to evidence relating to the Non-IP Disputes, Defendants are also planning on introducing evidence relating to Mr. Markham's concerns regarding dog safety and how that relates to the functional purpose of both the 'D562 Patent and the Accused Product. Specifically, Defendants plan on having Mr. Markham testify regarding his concerns about the rubber pet-toy ball product that KONG has sold for many years and why the purpose of the "groove-system" design in both the 'D562 Patent and the Accused Product is to allow airflow and prevent choking in the event a ball gets lodged in a dog's throat.

KONG acknowledges that some limited evidence, for the purpose of educating the jury on understanding the difference between an ornamental design and a functional design, regarding the functional aspects of using raised quadrants with grooves on a pet-toy ball will need to be introduced. However, the evidence Defendants plan on presenting at trial goes far beyond that limited relevant purpose. Instead, Defendants want to put the safety of KONG's products on trial and inflame the jury by claiming that this lawsuit is putting more dogs at risk. *See, e.g* Bounce Trial Exhibits 19, 20, and 32. Needless to say, KONG refutes such allegations and takes the safety of its products (and its reputation in the marketplace) very seriously.

However, the safety of KONG's products and Mr. Markham's views on why his design is safer are not relevant to any of the claims and defenses. In connection with KONG's design patent infringement claim, the jury's task will be to compare the overall ornamental design of the 'D562 Patent with the Accused Product and determine whether the designs are substantially similar.

9

*Smartrend Manufacturing Group, Inc. v. Opti-Luxx, Inc.*, 159 F.4th 1322, 1328 (Fed. Cir. 2025) ("To prove design patent infringement, a patentee must demonstrate that the accused product 'embod[ies] the patented design or any colorable imitation thereof.'" (*quoting Egyptian Goddess, Inc. v. Swisa, Inc.* 543 F.3d 665, 678 (Fed. Cir. 2008)). Evidence regarding Defendants' views on dog safety has no bearing on whether the two ornamental designs are similar.

Moreover, the fact that Mr. Markham believes KONG is acting in bad faith by trying to prevent Defendants from selling a "safer ball" is not a defense or a type of patent misuse. The fact that Mr. Markham believes that his groove system for a pet-toy ball is safer than a smooth ball (*i.e.* KONG's product) has no bearing on whether Defendants' Accused Product infringes KONG's design patent.

Dated: January 14, 2026

TAFT STETTINIUS & HOLLISTER LLP

By: s/ *Peter C. Biberstein*
    Peter C. Biberstein (#56088)
    Joseph C. Daniels (#41321)
    675 Fifteenth Street, Suite 2300
    Denver, CO 80202
    Telephone: (303) 297-2900
    E-mails: pbiberstein@taftlaw.com
              joe.daniels@taftlaw.com

*Attorneys for Plaintiff The Kong Company, LLC*

I hereby certify that the foregoing paper complies with the length limitation set forth in DDD Civ. P.S. III(A)(1).

s/ *Peter C. Biberstein*
Peter C. Biberstein

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2026, I electronically filed the foregoing **PLAINTIFF THE KONG COMPANY, LLC'S TRIAL BRIEF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Peter C. Biberstein*
Peter C. Biberstein, Attorney for Plaintiff

11

197397371v1